## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

4WALLS.COM, LTD.      )
            )
     Plaintiff,    )  CASE NO. 1:23-CV-02750-LDH-JAM
            )
   v.       )  JUDGE LaShann DeArcy Hall
            )
COUNTYWIDE BUILDERS, INC., et al. )  Magistrate Judge Joseph A. Marutollo
            )
    Defendants.   )
            )

### PLAINTIFF 4WALLS.COM, LTD.'S REPLY TO COUNTYWIDE BUILDERS, INC., MAYER WEBER, AND BAINBRIDGE MARION, LLC'S RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### Plaintiff and the Copyrights

1.  4walls designs and manufactures wall décor products. Ex. A,1 English Dep., 7:11–19; *see Also* https://www.4walls.com/; https://findyourlevel.com/

**RESPONSE NO. 1: Undisputed**

2.  4walls offers its wallcovering products through a variety of distributors and e-retailers. 4walls has developed various popular and successful brands, including LeVel Digital Wallcoverings. *Id.*, 27:25–28:4; *see also* https://www.4walls.com/suppliers; https://findyourlevel.com/where-to-buy/.

**RESPONSE NO. 2: Undisputed**

3.      Between 2018 and 2022, 4walls created the Copyrighted Works (wall covering products entitled, "Metropolitan" and "Workout"). Metropolitan Copyright Registration, Dkt. #26-1; Workout Copyright Registration, Dkt. #26-2.

**RESPONSE NO. 3: Undisputed**

4.      The copyrighted Metropolitan work is shown below, offered on the Level Digital website: https://findyourlevel.com/product/metropolitan-uptown/

**RESPONSE NO. 4: Undisputed**

5.      The copyrighted Workout work is shown below, offered on the Level Digital website: https://findyourlevel.com/product/workout-energetic-teal/

**RESPONSE NO. 5: Undisputed**

6.      4walls is the owner of all copyright rights in the Copyrighted Works. 4walls owns federal registrations for both Copyrighted Works: Registration No. VAu 1-472-308 (Metropolitan) and Registration No. VA 2-247-558 (Workout). The registration date for the Metropolitan design is May 9, 2022. The registration date for the Workout design is February 12, 2021. Metropolitan Copyright Registration, Dkt. #26-1; Workout Copyright Registration, Dkt. #26-2.

**RESPONSE NO. 6: Undisputed**

7.      4walls filed applications for supplementary registrations for both Metropolitan and Workout to correct an inadvertent misspelling of the author and claimant name, changing them from 4walls, Ltd. to 4walls.com, Ltd. The supplementary application has been registered for Metropolitan as VAu00149446 and for Workout as VA0002341990. *See id.*

2

**RESPONSE NO. 7: Undisputed**


**Defendants**

8.      Bainbridge is a limited liability company organized under the laws of the state of New

York and has its principal place of business at 1624 Webster Avenue, The Bronx, New York,

10457. Countywide, Bainbridge, Weber Answer to Amended Complaint, Dkt. #32, ¶ 13.

**RESPONSE NO. 8: Undisputed**


9.      Bainbridge is owned by Bernard Bauer. Ex. E, Bauer Dep., 10:7-10.

**RESPONSE NO. 9**: **Undisputed**


10.      Bainbridge owns an apartment building at 2586 Bainbridge Avenue, The Bronx, New

York, known as the Bainbridge Project. Bainbridge hired Countywide as the general contractor

for the construction of the Bainbridge Project. Countywide, Bainbridge, Weber Answer to

Amended Complaint, Dkt. #32, ¶ 13.

**RESPONSE NO. 10: Undisputed**


11.      Countywide is a corporation incorporated in New York and has its principal place of business

at 75 Seabring Street, Brooklyn, New York 11231. Countywide is a full-service general contracting

and construction management firm. Countywide's services include pre-construction coordination and

construction management. Countywide, Bainbridge, Weber Answer to

Amended Complaint, Dkt. #32, ¶ 11.

**RESPONSE NO. 11**: **Undisputed**

12.     Mayer Weber is the sole owner of Countywide. Mayer Weber is also "the boss of Countywide." Garry Weil, Countywide's 30(b)(6) corporate representative could not identify anyone higher up in authority than Mayer Weber at Countywide. Ex. B, Weber Dep. 9:6-13; Ex. C, Weil Dep., 22:2–25:33, 32:21–33:11, 37:17-21.

**RESPONSE NO. 12: Undisputed**


13.     Signup is a corporation organized under the laws of the state of New York and has its principal place of business at 126 Nostrand Avenue, Brooklyn, NY 11205. Signup is a print shop that prints and designs building signs, banners, foam board, plexiglass, wall coverings, etc. Signup, Teller Answer to Amended Complaint, Dkt. #42, ¶14; Ex. D, Teller Depo. 12:4-16, 18:23-24.

**RESPONSE NO. 13: Disputed**

As clearly shown in the deposition transcripts before the Court, neither Mayer Weber nor Mr. Weil (of Countywide) ever met or knew of SignUp prior to the Bainbridge project. Mr. Weil, who took over as "project manager" for the building when it was already completed and with only some items left to attend to (listed on a "punch list"), did not know of and did not retain Signup. A former employee did so (a Moshe Weber, not related to Defendant). Mr. Weil just reacted to Signup's email offer to provide the wallpaper SignUp apparently saw on the design plans sent to SignUp previously by Moshe Weber. Therefore, the Responding Defendants can neither dispute nor confirm Mr. Teller's or Signup's contentions of fact. See below.

Page 89

1    A.    He took the picture of the plan.

2    Q.    And he copied the design on the

3  plan to make the wall coverings, correct?

4    A.    Yes.  I would assume that's

5  where he took it from, yes.

6    Q.    Didn't Countywide provide the

7  design specification to Signup NY Corp.?

8    A.    As I stated before, we provided

9  to him the plans from the designer to do

10  the signage and -- the one that you

11  exhibited before, and in that package is

12  the wallpaper so he saw it there.

13    Q.    And that's what Signup copied,

14  correct, the images from the design

15  specifications that Countywide provided?

16         MR. MOSKOWITZ:  Objection.

17    A.    I'm not sure.  I don't know from

18  where he took it.

19    Q.    Where else would he have taken

20  it?

21         MR. MOSKOWITZ:  Objection.

22  Argumentative.

23    A.    When we hire a sub we assume

24  that they know what they're doing and they

25  don't do illegal activities.  They're a

**4walls' Reply No. 13**: Defendants' opposing statement does not address the substance of 4walls'

Material Fact No. 13 and should thus be considered undisputed. Indeed, Defendants admit they do

not dispute Material Fact No. 13. 4walls disputes Defendants' purported statements of fact in its

opposing statement. Signup admitted to having an established business relationship with

Countywide for more than ten years. Dkt. #58-6, 89:13-25. Countywide cannot shield itself from

liability by characterizing its conduct as a mere "react[ion]" to Signup's offer to create, copy, and hang the Copyrighted Works. Countywide had authority to choose the subcontractors (Ex. A, Weil Dep., 60:4-7)—Countywide's "reaction" was to choose Signup and direct it to copy the Copyrighted Works. Based on their prior dealings, Countywide saw "Signup as a convenient way to quickly finish the wall covering piece of the job," so Countywide decided to accept Signup's offer to create the wallcoverings, including copies of the Copyrighted Works. Dkt. #58-5, 83:14-20. Signup did not freely print and install the Copyrighted Works but were directly instructed to do so by Countywide. *See* Dkt. #58-14, 15.

14.    Chaim Teller is the sole owner of SignUp, has 100 percent equity in the company, and is compensated by the revenues that Signup generates. Ex. D, Teller Depo. 22:12-18, 26:3-6.

**RESPONSE NO. 14: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or Signup's contentions of fact.

4walls' Reply No. 14: As Defendants can neither confirm nor *dispute* Material Fact No. 14, Defendants should have responded to Material Fact No. 14 as "Undisputed," and its response should be construed as such. Additionally, Defendants have access to Chaim Teller's deposition and can confirm the accuracy of Material Fact No. 14. Chaim Teller admitted to being the sole owner of SignUp, having 100 percent equity in the company, and being compensated by the revenues that Signup generates. Dkt. #58-6, 22:12-18, 26:3-6. See below:

```
12              Are you an owner of SignUp?

13    A      Yes.

14    Q      Are you the sole owner?

15    A      Yes.

16    Q      So does that mean you have 100 percent equity

17           in the company?

18    A      Yes.

 3    Q      Does the money that gets paid to the

 4           employees and yourself come from the revenues

 5           that SignUp generates?

 6    A      Yes.
```

**Defendants' Copyright Infringement**

15.    On or around August 1, 2022, a sales representative of Surface Materials, 4walls'

distributor for New York and other territories ("Distributor"), began discussing the Bainbridge

Project with an employee of Design + Implementation Group ("DIG"), the interior design firm

for the Bainbridge Project. Ex. F, 4walls_000267; Ex. G, Email Thread between Surface

Materials and DIG.

**RESPONSE NO. 15: Disputed**

The email thread between Surface Materials and DIG is not contested. What is contested is

the implication of the statement that Countywide or any of Defendants were involved or guided or

even followed or knew of at the time of DIG's activities, given that DIG was another subcontractor

for the building project that acted independently of any of the Defendants.


4walls' Reply No. 15: Defendants provide no record citation to support its counter-statement. To

the extent Defendants' counter-statement claims that they were unaware of or did not follow the

DIG design specification, 4walls' disputes that claim. *See* Dkt. No. 58-1, ¶¶ 20, 21, 22, 23, 24, 25, 26, 43, 46, 47, 70, 72, and 73.

16.    The DIG employee was interested in using certain 4walls wall coverings, including the Copyrighted Works, in the Bainbridge Project. *Id.*

**RESPONSE NO. 16: Disputed**

The email thread between Surface Materials and DIG is not contested. What is contested is the implication of the statement that Countywide or any of Defendants were involved or guided or even followed or knew of at the time of DIG's activities, given that DIG was another subcontractor for the building project that acted independently of any of the Defendants.

4walls' Reply No. 16: Defendants provide no record citation to support its counter-statement. To the extent Defendants' counter-statement claims that they were unaware of or did not follow the DIG design specification, 4walls' disputes that claim. *See* Dkt. No. 58-1, ¶¶ 20, 21, 22, 23, 24, 25, 26, 43, 46, 47, 70, 72, and 73.

17.    By the end of August, 2022, DIG had written six 4walls/LeVel wall murals and three additional window films into the specification for the Bainbridge Project. Ex. H, Signup0008-Signup0018; Ex. F, 4walls_000267.

**RESPONSE NO. 17: Disputed**

The email thread between Surface Materials and DIG is not contested. What is contested is the implication of the statement that Countywide or any of Defendants were involved or guided or even followed or knew of at the time of DIG's activities, given that DIG was another subcontractor for the building project that acted independently of any of the Defendants.

<u>4walls' Reply No. 17</u>: Defendants provide no record citation to support its counter-statement. To the extent Defendants' counter-statement claims that they were unaware of or did not follow the DIG design specification, 4walls' disputes that claim. *See* Dkt. No. 58-1, ¶¶ 20, 21, 22, 23, 24, 25, 26, 43, 46, 47, 70, 72, and 73.

18.     As shown below, the design specification for the Bainbridge Project shows the Copyrighted Works, the manufacturer of the Copyrighted Works, the name of the Copyrighted Works, where the Copyrighted Works are to be installed, and a contact person (Vanessa Anderson) for Distributor of the Copyrighted Works. Ex. H, Signup0008-Signup0018.

**RESPONSE NO. 18: Disputed**

Nowhere in the design specifications is there any mention of "Copyrighted Works," or of the plaintiff herein or any information whatsoever reflecting who "authored" or owns any IP rights, if any, therein. Even a seasoned IP attorney would very likely not be able to find any connection to 4Walls from the information in the design specifications. Many other items in the specifications list <u>manufacturers and distributors</u> for various other products such as lighting products and the like. A copyright search for a work named "metropolitan" yields close to 4,000 "hits." Moreover, searches of the Copyright Registrar records do not show any photo. Therefore, in general, no one is even capable to know, one way or the other, what any of the thousands of registered works named "Metropolitan" looks like. Plaintiff suggests, ridiculously, that someone like Mr. Weil (who testified that prior to this dispute he did not know the term "copyright" or "author" or what legal rights attach to copyrights) could have called the paper distributor Material Surfaces and asked "is this paper copyrighted." There is no legal obligation to do so, and even posing such question is extremely unlikely to have provided any meaningful response from a busy sales clerk at Material Surfaces, which is just a wall paper seller.

<u>4walls' Reply No. 18</u>: Defendants provide no record citation to support its counter-statement. The Copyrighted Works, as discussed in Material Fact. No. 18, are the Metropolitan and Workout wallcoverings, not the words "Copyrighted Works." Defendants do not dispute that these Copyrighted Works were in the design specification. Defendants' attempts to argue that the Copyrighted Works are nearly impossible to find are misguided. The Copyrighted Works are explicitly associated with the brand LeVel Digital Wallcoverings in the design specification, which is a brand of 4walls. Defendants identify no facts in the record that suggest they performed even a cursory investigation into whether the Copyrighted Works are subject to copyright protection. Rather, the facts show they simply did not care. Dkt. No. 58-1, ¶¶ 29–46. In any event, 4walls, lists the Copyrighted Works as being copyrighted on their LeVel Digital Wallcoverings website,, and 4walls publishes publications with their copywritten designs which include notations that the designs are copywritten. Dkt. #58-3, 18:4-25, 21:3-6. Moreover, Defendants knew they were not the author of the Copyrighted Works and knew Signup was not the author of the Copyrighted Works (Dkt. No. 58-1, ¶¶ 56–75) and should have known or were willfully blind to the fact that copying the Copyrighted Works without the author's permission constitutes copyright infringement.

19.     The Copyrighted Works in the specification of the Bainbridge Project are the same as the Copyrighted Works as presented in the Complaint. Ex. C, Weil Dep., 66:10-68:15.

**RESPONSE NO. 19: Undisputed**

20.    Bainbridge possessed, was aware of, and reviewed the design specification containing the Copyrighted Works. Ex. E, Bauer Dep., 25:9-17, 28:3–5, 28:23–29:1, 30:23–31:1, 39:3–6, 41:6–10.

**RESPONSE NO. 20: Disputed**

Mr. Bauer of Bainbridge testified that he was asked by Countywide if he likes the wall paper selected by DIG and he responded that he objected to some of them and simply did not respond, i.e., did not explicitly object to, to the Metropolitan and Work Out wall paper. Mr. Bauer did not testify that he "reviewed" the design specification, per se.

4walls' Reply No. 20: Defendants provide no record citation to support its counter-statement. Bainbridge did admit to looking at the design specification containing the Copyrighted Works closely (i.e., reviewing). *See* Dkt. #58-7, 25:9-17, 28:3–5, 28:23–29:1, 30:23–31:1, 39:3–6, 41:6–10 (e.g., see below).

```
3          Q.    Let's talk about the wall art.
4    Did anybody look at that specification
5    closely?
6          A.    I looked at it, at the art.
```

21.    Bainbridge was responsible for the design proposals that were ultimately executed for the Bainbridge Project. Ex. E, Bauer Dep. 33:6-10.

**RESPONSE NO. 21: Disputed**

Bainbridge tacitly accepted, by not objecting, to the installation of the wall papers in this law suit. Bainbridge was not "responsible", in a legal sense, for the "design proposals" and in fact

there is no evidence that Bainbridge ever looked at the "design proposals" as such, or studied, or even knew of them, other for being shown "images" of the proposed wall paper.

4walls' Reply No. 21: Defendants provide no record citation to support its counter-statement. There is direct evidence that Bainbridge knew of, possessed, and looked closely at the at the design specification containing the Copyrighted Works. *See* Dkt. #58-7, 25:9-17, 28:3–5, 28:23–29:1, 30:23–31:1, 39:3–6, 41:6–10 (e.g., see below). Defendants' opposition statement is contradicted by the record: Bainbridge directly admits to possessing and looking at the Copyrighted Works *in the design specification itself*. See, e.g., Dkt. #58-3, 30:23-31:1 (see below)

```
23       Q.    You mentioned before that you
24   saw the images, at least the Metropolitan
25   design, in the design specification, right?
1        A.    Yes.
```

22.    Bainbridge did not disapprove the use of the Copyrighted Works for the Bainbridge Project, despite reviewing and having the authority to do so. Ex. E, Bauer Dep. 33:6-10

**RESPONSE NO. 22: Disputed**

Bainbridge tacitly accepted, by not objecting, to the installation of the wall papers in this law suit. Bainbridge was not "responsible", in a legal sense, for the "design proposals" and in fact there is no evidence that Bainbridge ever looked at the "design proposals" as such, or studied, or even knew of them, other for being shown "images" of the proposed wall paper.

4walls' Reply No. 22: Plaintiff incorporates 4walls' Reply No. 21 in its entirety herein.

23.    Countywide also possessed, was aware of, and reviewed the design specification containing the Copyrighted Works. Ex. I, CW000158; CW000031–115; Ex. C, Weil Dep., 71:4–10, 74:17–22, 84:3–16, 88:6–12; Ex. B, Weber Dep., 20:20–25, 23:7–13, 35:18–24, 46:21–47:6.

**RESPONSE NO. 23: Disputed**

Mr. Weber testified that he never looked at the design specifications as such. Mr. Weil testified that all Countywide did (via Moshe Weber) is send them to Signup to procure the "signage" needed for the building.

4walls' Reply No. 23: Defendants provide no record citation to support its counter-statement. Mayer Weber testified that he and Countywide had access to the design specification. Moreover, Countywide did review the design specification, as Countywide testified that the Copyrighted Works and LeVel Digital Wallcoverings were included in the design specification. *See* Dkt. #58-5, 84:3-16. The Defendants do not dispute that *Countywide*, the defendant identified in Material Fact No. 23, possessed, was aware of, and reviewed the design specification containing the Copyrighted Works.

24.    Countywide was responsible for procuring a subcontractor for manufacturing the wallcoverings specified in the design specification, including the Copyrighted Works. Ex. C, Weil Dep., 27:14–20.

**RESPONSE NO. 24: Disputed**

The statement is a legal contention, not a factual recitation. Countywide was tasked by Bainbridge to retain subcontractors for the myriads of tasks specified in the architectural and design plans. Countywide never asked anyone to "manufacturer" anything. The subcontractors are assumed by Countywide to know how to go about executing the building projects for which they were retained, based solely on the "plans" provided to them.

<u>4walls' Reply No. 24</u>: Defendants provide no record citation to support its counter-statement. Statement No. 24 is a factual recitation, and it is unclear on what basis Defendants dispute this statement. In fact, Defendants admit "Countywide was tasked by Bainbridge to retain subcontractors for the myriads of tasks . . . ." To the extent Defendants dispute that they asked Signup to manufacture the wall coverings, this is contradicted by the facts in the record. Dkt. 58-1, ¶¶ 24, 28, 31, 35, 37.

25.     On September 9, 2022, Distributor sent pricing of the wall coverings to Countywide regarding the Bainbridge Project, and on September 13, 2022, Distributor sent digital mock-ups of the wall coverings to Countywide, including for the Copyrighted Works. Ex. K, CW000159-CW000162.

**RESPONSE NO. 25: Disputed**

The existence of and the contents of Ex. K are correct, it being noted that the communication is with Moshe Weber who departed Countywide before the building was completed. But Plaintiff's implication that either Mr. Weber or Mr. Weil (Mr. Weil took over as project manager after Moshe Weber) knew anything of the email exchanged by Moshe Weber with Surface Materials were denied by both Weber and Weil at their depositions.

<u>4walls' Reply No. 25</u>: Defendants provide no record citation to support their claim that Mr. Weber and Mr. Weil did not know of the email in Ex. K, CW000159-CW000162.

26.     Also on September 13, 2022, Countywide contacted Signup to send a quote for the production of several signs to be used in the Bainbridge Project and sent the design

specification for the Bainbridge Project to Signup Ex. M, CW000178-CW000180, Ex. D,

Teller Dep. 41:2042:8.

**RESPONSE NO. 26: Disputed**

Disputed as phrased. Moshe Weber sent to Signup the DIG design plans for a quote on

the "signage," and nothing else. Signup responded that they see on the plans wall paper and

they can supply it.

4walls' Reply No. 26: Defendants have provided no basis for disputing Material Fact No. 26.

27.    Signup and Countywide have an established business relationship of over 10 years. Ex.

D, Teller Dep. 81:18-82:3.

**RESPONSE NO. 27: Disputed**

Mr. Weber and Mr. Weil testified they did not know of Signup prior to the Bainbridge

project, and there are no papers showing or evidencing Mr. Teller's statement.

4walls' Reply No. 27: Defendants provide no record citation to support their counter-statement or to

dispute Mr. Teller's testimony that "Signup and Countywide [not just Mr. Weber or Mr. Weil] have

an established business relationship of over 10 years." Dkt. #58-6, 81:18–82:3.

28.    Along with printing the signs, Signup offered to print the wall coverings included in

the specification for the Bainbridge Project, including the Copyrighted Works. Ex. M,

CW000178; Ex. C, Weil Dep., 80:8–24, 81:12–17, 86:9–21.

**RESPONSE NO. 28: Disputed**

There is no testimony by anyone that speaks of "printing" anything. Signup stated to Countywide that it can provide and install the wall covering shown in the DIG plans.

4walls' Reply No. 28: Defendants provide no record citation to support its denial. Mr. Weil's testimony contradicts Defendants' position. *See*, *e.g.*, Ex. A, Weil Dep. 87:9–21; 90:3–7.

29.     Around this same time, Mayer Weber, the owner and boss of Countywide, was concerned that Countywide was nearing the deadline for completing the Bainbridge Project. Ex. B, Weber Dep., 28:16–29:11.

**RESPONSE NO. 29: Undisputed**

30.     In order to make the deadline, Mayer Weber contacted Garry (Gershy) Weil, the Countywide Site Manager for the Bainbridge Project, to "light a fire under Mr. Weil." Ex. B, Weber Dep., 29:4–11.

**RESPONSE NO. 30: Undisputed**

31.     Mayer Weber instructed Garry Weil to hire a firm that could print and install the wall coverings the quickest—not the firm that was specified in the specification for the Bainbridge Project. Ex. B, Weber Dep. 30:2-25.

**RESPONSE NO. 31: Disputed**

Mr. Weber did not testify that he "instructed Garry Weil to hire a firm that could print and install the wall." Mr. Weber did not instruct anyone to "print" anything.

<u>4walls' Reply No. 31</u>: Defendants provide no record citation to support its counter-statement. Mayer Weber directly instructed Garry Weil to "go to the firm that could get it done the quickest." Here, "it" clearly means print and install the Copyrighted Works. Dkt. #58-4, 30:2-25 (see below).

```
13          Q.    What did you do to fix that?
14          A.    I instructed him to execute a
15   deal with someone to provide the wall
16   coverings as soon as possible.
17          Q.    Did you tell him to go with the
18   firm that was specified in the design
19   specification?
20          A.    I told him to go to the firm
21   that could get it done the quickest.
```

32.     At that time, there were some outstanding projects to be completed, including hanging the wall coverings at the Bainbridge Project. These outstanding projects, including the wall coverings, were listed in a "punch list," which in the construction industry is a list of "the last item[s] before you hand over the building to the owners[.]" Ex. C, Weil Dep., 91:4–92:9.

**RESPONSE NO. 32: Undisputed**

33.     Both Garry Weil and Mayer Weber were aware of the punch list and that these items, including the wall coverings, needed to be completed in order to hit the Bainbridge Project deadline. Ex. C, Weil Dep., 91:4–92:9; Ex. B, Weber Dep., 34:9–34:23.

**RESPONSE NO. 33: Undisputed**

34.     Garry Weil understood that "under the pressure of my boss we were supposed to be done and just hand over the building. So last details [sic] I was under pressure to just get it done no matter how and let's be done." Ex. C, Weil Dep., 82:5–83:1.

**RESPONSE NO. 34: Disputed**

The "get it done no matter how" statement is taken out of context. Mr. Weil testified as shown below.

```
    Page 83
done.
    Q.     Okay.
           And your boss is Mayer Weber,
correct?
    A.     Yes.
    Q.     And he was putting pressure on
you to finish the job by the deadline,
correct?
    A.     Yes.
    Q.     So at the time you were not
considering any other subcontractor
besides Signup; is that right?
    A.     Yes.
    Q.     And did you see Signup as a
convenient way to quickly finish the wall
covering piece of the job?
    A.     Yes, because I wasn't getting an
answer from my office and he offered that
he could do it so I said, okay.  Let's
just get it done.
```

And as noted elsewhere, Mr. Weil did not know at the time (he communicated with Signup) of the offer to provide the wall paper from Material Surfaces, and might very likely have retained them to finish the job sooner than Signup, as cost of the wall paper was not a factor, being literally "pennies" compared to the overall price of constructing the building.

4walls' Reply No. 34: The Defendants' deposition citation does not support its subsequent characterization and counter-statement of facts, and Defendants provide no other record citation to support its characterization. The "get it done no matter how" statement was not taken out of context, and evidenced by Defendants' own response, Gary Weil was not considering any other subcontractor besides Signup, as he saw Signup as a convenient way to finish the Copyrighted Works quickly. Moreover, Defendants provide no record citation that supports its claim that Gary Weil was entirely unaware of the offer by Surface Materials (via DIG). Additionally, what Gary Weil "might" have done is irrelevant and unsupported by any record citation.

35. Because Countywide was in a rush to complete the job, Countywide did not consider any other subcontractors besides Signup to print the wall coverings, even though Distributor sent pricings of the wall coverings to Countywide four days before Countywide contacted Signup to print the wall coverings. Ex. C, Weil Dep. 81:19-24, 83:14–20; Ex. K, CW000159-CW000162.

**RESPONSE NO. 35: Disputed**

Mr. Weil testified that that he did not know of the prior offer procured by Moshe Weber. Also, Countywide did not hire Signup to "print" anything.

4walls' Reply No. 35: Defendants provide no record citation to support its counter-statement. 4walls incorporates its Reply to Material Fact Nos. 28 and 31.

36. Countywide saw "Signup as a convenient way to quickly finish the wall covering piece of the job," so Countywide decided to accept Signup's offer to create the wallcoverings, including copies of the Copyrighted Works. Ex. C, Weil Dep., 83:14–20.

**RESPONSE NO. 36: Disputed**

Countywide accepted Signup's offer to supply and install the wallcoverings. Countywide knew nothing of "Copyrighted Works" and did not accept "copies" of Copyrighted Works it did not know existed.

4walls' Reply No. 36: Defendants provide no record citation to support its counter-statement. By Defendants' own admission, the Copyrighted Works in the specification of the Bainbridge Project are the same as the Copyrighted Works as presented in the Complaint. *See* Response No. 19. Therefore, Countywide did accept copies of the Copyrighted Works. Also, Countywide did know that Signup was providing copies of the Copyrighted Works. *See* Dkt. #58-5, 83:14–20; *see also* Dkt. No. 58-1, ¶¶ 17, 18, 19, 20, 21, 22, 23, 24, 26–47.

37.    On September 15, 2022, Countywide agreed to pay Signup $8,991.34 for the production of the wall coverings. Ex. L, CW000176, Ex. H, Signup0001-Signup0002.

**RESPONSE NO. 37: Disputed**

Countywide agreed to pay, as an agent for Bainbridge, for Signup to procure and install the wall coverings. Countywide did not ask Signup to "produce" anything.

4walls' Reply No. 37: Defendants provide no record citation in support of their counter-statement. Defendants' claim that "Countywide did not ask Signup to 'produce' anything" is contradicted by the factual record. *See*, *e.g.*, Dkt. No. 58-1, ¶¶ 17, 18, 19, 20, 21, 22, 23, 24, 26–48.

38.    Countywide did not tell Signup that Countywide had the rights to copy the Copyrighted Works. Ex. C, Weil Dep. 89:14-17.

**RESPONSE NO. 38: Undisputed**

39.    Countywide knew Countywide was not the author of the Copyrighted Works. Ex. C, Weil Dep. 83:22 – 85:10.

**RESPONSE NO. 39: Disputed**

Mr. Weber testified he knew absolutely nothing of and was not involved with the Design Plans substantively, to the extent of being aware they involved signage, wall coverings etc. Mr. Weil testified he knew nothing of "Copyright Works", Surface Materials and certainly of Plaintiff, and as a lay person does not have even a rudimentary idea of what the term "author" means in the legal context of the Copyright Law.

4walls' Reply No. 39: Defendants provide no record citation to support its counter-statement. Gary Weil directly testified that Countywide knew Countywide was not the author of the Copyrighted Works. Dkt. #58-5, 83:22-85:10.

40.    Countywide also knew that Signup was not the author of the Copyrighted Works. Ex. C, Weil Dep. 85:12–88:5.

**RESPONSE NO. 40: Disputed**

Mr. Weber testified he knew absolutely nothing of and was not involved with the Design Plans substantively, to the extent of being aware they involved signage, wall coverings etc. Mr. Weil testified he knew nothing of "Copyright Works", Surface Materials and certainly of Plaintiff, and as a lay person does not have even a rudimentary idea of what the term "author" means in the legal context of the Copyright Law.

4walls' Reply No. 40: Defendants provide no record citation to support its counter-statement. Gary Weil testified that Countywide knew Signup was not the author of the Copyrighted Works.  Dkt. #58-5, 85:12–88:5.

41.    Countywide has admitted that it did not conceive, develop and/or create the wallcovering works that were ultimately installed in the Bainbridge Building. Ex. N, Defendant Countywide Builders, Inc.'s Supplemental Responses to Plaintiff 4walls.com, Ltd.'s First Set of Interrogatories, Response to Interrogatory No. 1.

**RESPONSE NO. 41: Undisputed**

42.    Signup did not tell Countywide that it had the rights to copy the Copyrighted Works. Ex. D, Teller Dep., 89:18–24.

**RESPONSE NO. 42: Undisputed**

43.    The design specification identified LeVel as the manufacturer of the Copyrighted Works, which both Signup and Countywide had in their possession and reviewed. *See* ¶¶23, 26.

**RESPONSE NO. 43: Undisputed**

44.    Countywide told Signup that it was under a time constraint to get the wall covering job done. Ex. C, Weil Dep. 91:11-15.

**RESPONSE NO. 44: Undisputed**

45.     Between September 15, 2022, and October 3, 2022, Countywide repeatedly requested the status of the wall coverings and urged Signup to complete the print job as quickly as possible. Ex. L, CW000170-CW000176, Ex. C, Weil Dep. 90:11-15.

**RESPONSE NO. 45: Disputed**

Countywide expected, as it expects of all the subcontractors it retains, that Signup knows what they are doing, and that Signup's actions are proper under all the applicable legal and regulatory requirements. Countywide did not retain or direct Signup to carry out a "print job" with the negative connotation implied by the statement above.

4walls' Reply No. 45: Defendants provide no record citation to support its counter-statement.

46.     Countywide urged Signup to just copy the designs from the design specification because they did not have a digital file containing the designs. Ex. D, Teller Dep., 45:16–46:21.

**RESPONSE NO. 46: Disputed**

Signup informed Countywide that they are printing the paper from the design plan, that the paper is somewhat blurry and all Mr. Weil did was to state that he will accept the paper as is.

4walls' Reply No. 46: Defendants provide no record citation to support its counter-statement. Signup testified that Countywide directed Signup to copy the designs from the design specification. Specifically, Countywide said "[t]his is the file. Use this file," where the file being referred to is the design specification. Dkt. #58-6, 45:16–46:21.

47.     At the direction of both Countywide and Chaim Teller (Signup's owner), Signup then copied and printed the Copyrighted Works for the Bainbridge Project by cropping and enlarging the Copyrighted Works directly from the specification for the Bainbridge Project. Ex. D, Teller Dep. 47:4–48:3, 81:13-17.

**RESPONSE NO. 47: Disputed**

Signup informed Countywide that they are printing the paper from the design plan, that the paper is somewhat blurry and all Mr. Weil did was to state that he will accept the paper as is.

4walls' Reply No. 47: Plaintiff incorporates 4walls' Reply No. 46 in its entirety herein. Defendants provide no record citation to support its counter-statement. Signup admitted to copying and printing the Copyrighted Works for the Bainbridge Project by cropping and enlarging the Copyrighted Works directly from the specification for the Bainbridge Project. Dkt. #58-6, 47:4–48:3, 81:13-17.

48.     Chaim Teller supervised the printing of the Copyrighted Works. Ex. D, Teller Dep. 107:3-6.

**RESPONSE NO. 48: Undisputed**

49.     As part of his job duties, Chaim Teller overlooks "everything" and is involved in every print job for Signup. Ex. D, Teller Dep. 13:2-13.

**RESPONSE NO. 49: Undisputed**

50.     Mayer Weber, Countywide' s owner, had the right and ability to, and ultimately did, supervise the construction of the Bainbridge Project. Ex. B, Weber Dep., 10:9–18.

**RESPONSE NO. 50: Disputed**

Mayer Weber was rarely at the construction site, and his supervision was very general, mainly to assure that the building is going up according to the schedule. He was not at all with the wall coverings.

4walls' Reply No. 50: Defendants provide no record citation to support its counter-statement. Mayer Weber admitted to having the right and ability to supervise the construction of the Bainbridge Project. Dkt. #58-4, 10:9–18. Countywide also testified that Mayer Weber visited the site of the Bainbridge Project every week to check on the progress of the building and "light the fire to get the project done." Dkt. #58-5, 113:17-24.

51.    Mayer Weber provides projects to project managers (i.e., his employees), has the right to tell the project managers what to do on certain projects, and has the right to supervise his project managers and what they do with the projects. Ex. C, Weil Dep. 36:17-37:4, Ex. B, Weber Dep. 1-:9-18.

**RESPONSE NO. 51: Undisputed**

52.    Countywide is a small company with not many employees, and its corporate representative did not know if it employed more than 2–5 people. Ex. C, Weil Dep. 29:22–32:19.

**RESPONSE NO. 52: Disputed**

While Mr. Weil did not know the number of employees, Mr. Weber was also deposed and provided the appropriate responses.

4walls' Reply No. 52: Defendants provide no record citation to support its counter-statement. Gary Weil was the designated representative of Countywide.

53.    As the owner of Countywide, Mayer Weber had a direct financial interest in the copying of the Copyrighted Works because Countywide was paid to complete the Bainbridge Project by a deadline and Countywide would have incurred reputational harm that would have resulted in less future business in not completing the Bainbridge Project in time. Ex. B, Weber Dep., 27:11–28:8.

**RESPONSE NO. 53: Disputed**

The statement is obviously not true. Countywide received a fixed fee for managing the construction. If Mayer Weber had known of the offer from Material Surfaces and have accepted it, the slightly higher price (about $2,000) would have been reimbursed by Bainbridge. There was no financial incentive to Countywide, and certainly not personally to Mr. Weber.

4walls' Reply No. 53: Defendants provide no record citation to support its counter-statement. Mayer Weber testified that reputational harm that would have resulted in less future business in not completing the Bainbridge Project in time. *See* Dkt. #58-4, 27:11-28:8. Reputational harm relates to "direct financial interest." *In re Frontier Communications Corp.*, 658 B.R. 277, 292 (S.D.N.Y. 2024).

54.    Mayer Weber also induced, caused, and materially contributed to the unauthorized copying of the Copyrighted Works by putting pressure on the site manager, Garry Weil, to complete the wallcovering project "no matter how" and to use the firm that could provide the wallcoverings the quickest rather than the one specified in the design specification. Ex. C, Weil Dep., 82:5–83:1; Ex. B, Weber Dep. 30:2-25.

**RESPONSE NO. 54: Disputed**

Firstly, Mr. Weber knew nothing of contents of the DIG plans, of the wall coverings and of plaintiff. Mr. Weber cannot be said to "induce" anyone of "unauthorized copying" of

"Copyrighted Works" that Mr. Weber does not even know exist. This is not a statement of fact but a legal contention.

4walls' Reply No. 54: Defendants provide no record citation to support its counter-statement. Mayer Weber knew that the wall coverings were one of the items that were not yet finished in the Bainbridge Project, and instructed Gary Weil to "execute a deal with someone to provide the wall coverings as soon as possible." Dkt. #58-4, 30:2-25. Also, Mayer Weber was aware of the design specification and still told Gary Weil to go with the firm that could print and install the wall coverings the quickest, not the firm that was specified in the design specification. *Id*.

55.     As shown below, the copies of the Copyrighted Works printed by Signup were ultimately installed in the Bainbridge Building. Ex. C, Weil Dep., 21:22–22:1, 95:18–22.

**RESPONSE NO. 55: Undisputed**

### **The Defendants' Infringement Was Willful.**

56.     Printing, manufacturing, and hanging wallcoverings is not uncommon in the building and construction industry. It is common for Countywide to procure subcontractors to create and install wallcoverings. Ex. C, Weil, Dep. 39:19–40:5; Ex. B, Weber Dep., 33:19-24.

**RESPONSE NO. 56: Disputed**

The first sentence is correct insofar as it is true that "printing, manufacturing and hanging" of wall coverings takes place in relation to building constructions. But Countywide never retains subcontractors to "create and install" wallcovering in the sense not permitted by law. Here, Countywide retain the DIG design group, and Countywide would not have known, one way or the other, whether DIG "created" the particular design or obtained it from others, etc.

<u>4walls' Reply No. 56</u>: Defendants provide no record citation to support its counter-statement. Material Statement No. 56 is supported by the record evidence. Dkt. #58-5, 39:19–40:5; Dkt. #58-4, 33:19-24. For example, Countywide testified that it is common for Countywide to "find a subcontractor that can supply [] wallcovering[s]." Dkt. #58-5, 39:19–40:5.

57.    Countywide does not have any written policies ensuring that it is respecting other people's copyrights when they procure wall coverings. Ex. C, Weil Dep. 41:9-13; Ex. B, Weber Dep., 21:13–20.

**RESPONSE NO. 57: Undisputed**

58.    Countywide does not have any type of policies that ensure it has the rights to make copies of and hang wallcovering designs before it goes through with a project. Ex. B, Weber Dep. 23:14-19.

**RESPONSE NO. 58: Disputed**

Countywide' s "policy" is to rely on its subcontractors to know of and comply with ALL statutory and other regulations pertinent and relevant to their specially trade.

<u>4walls' Reply No. 58</u>: Defendants provide no record citation to support its counter-statement. Countywide testified that it does not have any type of policies that ensure it has the rights to make copies of and hang wallcovering designs before it goes through with a project. Dkt. #58-4, 23:14-19.

59.    Countywide does not provide any education or training to project managers regarding

respecting copyrights. Ex. C, Weil Dep., 42:11-14, Ex. B, Weber Dep., 22:12-15.

**RESPONSE NO. 59: Disputed**

Countywide's "policy" is to rely on its subcontractors to know of and comply with ALL statutory and other regulations pertinent and relevant to their specially trade.

4walls' Reply No. 59: Defendants provide no record citation to support its counter-statement. Countywide testified that it does not provide any education or training to project managers regarding respecting copyrights. Dkt. #58-5, 42:11-14; Dkt. #58-4, 22:12-15.

60.    Countywide knew it did not the author the Copyrighted Works. Ex. C, Weil Dep. 83:22– 85:10.

**RESPONSE NO. 60: Disputed**

In general, a person cannot possibly "know" what she/he does not "know." Here, Countywide did not know, prior from hearing from 4Walls (whose name did not appear in any of the DIG papers), of the existence of "Copyrighted Works" and had new clue what the terms "author" and/or Copyrighted Work mean in the sense of the Copyright Laws. Countywide does not have any attorneys on its staff.

4walls' Reply No. 60: Defendants provide no record citation to support its counter-statement and is simply attorney argument. Countywide testified that Countywide knew it did not author the Copyrighted Works. Dkt. #58-5, 83:22– 85:10.

61.    Countywide also knew that Signup was not the author of the Copyrighted Works. Ex. C, Weil Dep. 85:12–88:5.

**RESPONSE NO. 61: Disputed**

In general, a person cannot possibly "know" what she/he does not "know." Here, Countywide did not know, prior from hearing from 4Walls (whose name did not appear in any of the DIG papers), of the existence of "Copyrighted Works" and had new clue what the terms "author" and/or Copyrighted Work mean in the sense of the Copyright Laws. Countywide does not have any attorneys on its staff.

4walls' Reply No. 61: Defendants provide no record citation to support its counter-statement and is simply attorney argument. Countywide testified that Countywide knew Signup did not author the Copyrighted Works. Dkt. #58-5, 85:12–88:5.

62.    Mayer Weber never told Garry Weil to make sure that Signup was respecting copyright law. Ex. B, Weber Dep., 48:18-21.

**RESPONSE NO. 62: Undisputed**

63.    Part of Signup's business is printing designs on "banners, large format, foam boards, corrugated plastic, plexi, aluminum" and "wall coverings." Ex. D, Teller Dep., 12:10–22, 18:10–19:11.

**RESPONSE NO. 63: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or SignUp's contentions of fact.

4walls' Reply No. 63: As Defendants can neither confirm nor *dispute* Material Fact No. 63, Defendants should have responded to Material Fact No. 63 as "Undisputed," and its response should be construed as such.

64.     Signup does not create original art to print, but it prints "[a]nything that somebody sends us." Ex. D, Teller Dep., 12:15–22.

**RESPONSE NO. 64: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or SignUp's contentions of fact.

4walls' Reply No. 64: As Defendants can neither confirm nor *dispute* Material Fact No. 64, Defendants should have responded to Material Fact No. 64 as "Undisputed," and its response should be construed as such.

65.     Chaim Teller has an understanding of what copyrights are. Ex. D, Teller Dep., 48:14–49:6.

**RESPONSE NO. 65: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or SignUp' s contentions of fact, but would observe that is Mr. Teller has an understanding of what copyrights are, it is inexplicable why he printed (and allowed Countywide to accept) wallcoverings based on images provided, not by Countywide, but by an independent designer such as DIG.

4walls' Reply No. 65: As Defendants can neither confirm nor *dispute* Material Fact No. 65, Defendants should have responded to Material Fact No. 65 as "Undisputed," and its response should be construed as such. Moreover, the Copyrighted Works were provided to Signup *by Countywide*, not by DIG. Dkt. #58-6, 41:22-42:8. Defendants' observations regarding Signup's actions are unsupported attorney speculation.

66.    Signup never confirmed who created the Copyrighted Works it copied to create the wallcoverings. Ex. D, Teller Dep., 55:24–56:1.

**RESPONSE NO. 66: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or SignUp's contentions of fact.

4walls' Reply No. 66: As Defendants can neither confirm nor *dispute* Material Fact No. 66, Defendants should have responded to Material Fact No. 66 as "Undisputed," and its response should be construed as such.

67.    Signup never asked anybody who created the Copyrighted Works it copied to create the wallcoverings. Ex. D, Teller Dep., 56:14–16.

**RESPONSE NO. 67: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or Signup's contentions of fact.

4walls' Reply No. 67: As Defendants can neither confirm nor *dispute* Material Fact No. 67, Defendants should have responded to Material Fact No. 67 as "Undisputed," and its response should be construed as such.

68.    Signup has no written policies about copyright rights. Ex. D, Teller Dep., 34:13–35:7.

**RESPONSE NO. 68: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or Signup's contentions of fact.

<u>4walls' Reply No. 68</u>: As Defendants can neither confirm nor *dispute* Material Fact No. 68, Defendants should have responded to Material Fact No. 68 as "Undisputed," and its response should be construed as such.

69.     Signup's general policy is that it will print whatever designs are sent to it as long as the customer pays, unless they contain a "watermark." Ex. D, Teller Dep., 93:8-94:5.

**RESPONSE NO. 69: Disputed**

The Responding Defendants can neither dispute nor confirm Mr. Teller's or Signup's contentions of fact.

<u>4walls' Reply No. 69</u>: As Defendants can neither confirm nor *dispute* Material Fact No. 69, Defendants should have responded to Material Fact No. 69 as "Undisputed," and its response should be construed as such.

70.     Bainbridge possessed and reviewed the design specification, which specified the Copyrighted Works for the Bainbridge Project. Ex. E, Bauer Dep., 25:9-17, 28:3–5, 28:23–29:1, 30:23–31:1, 39:3–6, 41:6–10.

**RESPONSE NO. 70: Disputed**

As noted above, Mr. Bauer looked at images of proposed wall coverings, not at design plans.

<u>4walls' Reply No. 70</u>: Defendants provide no record citation to support its counter-statement. Bainbridge did admit to looking at the design specification containing the Copyrighted Works

closely (i.e., reviewing). *See* Dkt. #58-7, 25:9-17, 28:3–5, 28:23–29:1, 30:23–31:1, 39:3–6, 41:6– 10 (e.g., see below).

```
3        Q.    Let's talk about the wall art.
4   Did anybody look at that specification
5   closely?
6        A.    I looked at it, at the art.
```

71.     Bainbridge has an understanding of what copyrights are. Ex. E, Bauer Dep., 55:3-21.

**RESPONSE NO. 71: Undisputed**

72.     Bainbridge communicated with Countywide as far as the design aspects of the project went. Ex. E, Bauer Dep., 34:14-17.

**RESPONSE NO. 72: Undisputed**

73.     Bainbridge had the authority to disapprove of any designs used in the Bainbridge Project. Ex. E, Bauer Dep., 33:6-10.

**RESPONSE NO. 73: Undisputed**

74.     Bainbridge had no interest in reviewing or knowing who created the Copyrighted Works. Ex. E, Bauer Dep., 41:13-42:7.

**RESPONSE NO. 74: Disputed**

As with Countywide, Bainbridge understood that Countywide is retaining subcontractors

for the building project.

<u>4walls' Reply No. 74</u>: Defendants provide no record citation to support its counter-statement. Defendants' counter-statement does not address Material Statement No. 74. Bainbridge testified that Bainbridge had no interest in reviewing or knowing who created the Copyrighted Works. Dkt. #58-7, 41:13-42:7.

75.     Bainbridge did not ask anyone at Countywide whether Countywide received permission to print or have a subcontractor print the Copyrighted Works. Ex. E, Bauer Dep., 45:17-20.

**RESPONSE NO. 75: Undisputed**

Respectfully submitted,

Dated: August 16, 2024

By: <u>/s/  Andrew Alexander</u>
Raymond Rundelli (admitted *Pro Hac Vice*)
Andrew Alexander (admitted *Pro Hac Vice*)
CALFEE, HALTER & GRISWOLD LLP
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
E-mail:    rrundelli@calfee.com
              aalexander@calfee.com

Noam J. Kritzer
KRITZER MCPHEE LLP
256 Columbia Turnpike
Edison Suite, Room 204
Florham Park, New Jersey 07932
Telephone: (973) 679-7272
E-mail:    nkritzer@kmpatentlaw.com

Ryan S. McPhee
KRITZER MCPHEE LLP
501 W. Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 758-3600
E-mail: rmcphee@kmpatentlaw.com

*Attorneys for the 4walls.com, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Reply to Countywide Builders, Inc., Mayer Weber, and Bainbridge Marion, LLC's Responses to Plaintiff's Statement of Material Facts was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on August 16, 2024.


/s/ *Andrew Alexander*
One of the Attorneys for Plaintiff